135 N.J. Super. 513 (1975)
343 A.2d 783
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS EARL KENNEDY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1975.
Decided July 29, 1975.
*516 Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Forrest R. Goodrum, designated counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Damon R. Sedita, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by BOTTER, J.A.D.
Defendant appeals from a conviction in a jury trial for forcible rape (N.J.S.A. 2A:138-1) and robbery (N.J.S.A. 2A:141-1) while armed (N.J.S.A. 2A:151-5). He was sentenced to State Prison for a term of seven to ten years on the rape conviction, with a consecutive term of two to three years for robbery and a concurrent term of one to three years for being armed while committing the robbery. On this appeal defendant contends that various rulings during the trial, as well as unfair comment by the prosecutor, warrant a new trial.
The victim, Mrs. S.P., testified that on December 19, 1971, at 5:30 p.m., a month after getting married, she was *517 on a street corner waiting for a bus when defendant confronted her with a handgun. Defendant demanded money and she gave him five dollars. Defendant then ordered her to accompany him to a vacant garage where she submitted to sexual intercourse. Fearing for her safety, S.P. flattered defendant. She said she was enjoying herself. He said his name was James. He asked to see her again. She agreed and a meeting was arranged for the next day. As S.P. was late for work, defendant took her there by cab. He paid the fare with the five dollar bill he had taken from S.P. and gave her the change.
S.P. worked a night shift at the Newark Post Office. She testified that upon entering the post office she told a security officer that she had just been raped and robbed. A call was made to her husband. She was taken to the nurse's office and later to a hospital where the police interviewed her. She described her assailant to the police and said that he identified himself as James.
The next day S.P. met several detectives and they accompanied her to the meeting place previously arranged between S.P. and defendant. When defendant arrived S.P. gave a signal, identified defendant, and he was arrested. Defendant was given Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and was transported to police headquarters. On cross-examination S.P. denied that she had ever before seen or known defendant. Other evidence by the State was offered to corroborate S.P.'s conduct after arriving at the post office and to show that she was upset and wept shortly after reporting the incident, and that her clothing was soiled.
Evidence was then offered for the defense tending to prove that defendant did not possess a gun on the day in question and that S.P. lived in defendant's neighborhood and had been seen with defendant and at defendant's house on several occasions in 1969 during S.P.'s last year in high school. S.P. was then recalled in rebuttal to disprove the description of her 1969 hair style given by defendant's witnesses. *518 Through S.P. the State introduced a high school yearbook containing pictures of her, and other photographs were introduced to show how she wore her hair in 1969. The State also recalled a detective who had arrested defendant and transported him to headquarters. The witness testified that defendant at that time denied commiting rape and said he "didn't know the girl."
Defendant then took the stand. He testified that he had had sexual relations with S.P. on a number of occasions in 1969 at his home. He also testified that: he had a chance encounter with S.P. on December 19, 1971; she made overtures to him; they started to embrace on the street corner; they searched for a place where they could have privacy; they found a garage with an open door where they had sexual relations; they agreed to meet again; a short while later defendant took her to the attic of his mother's house where they again had intercourse; S.P. tried to persuade him to take up with her again but he refused because he was then married; she became angry and threatened retaliation and, finally, he went to meet her the next day at the behest of a friend so that he could give his friend the opportunity of taking up with her. It was at this meeting that defendant was arrested. Defendant denied having a gun, denied raping and robbing S.P. and denied taking her to work in a cab. He admitted using various names in connection with his religion, such as Thomas 27X. John 27X, Ali 27X. Salim 27X, Sabu 27X and others, but not the name James. He also testified that because he was frightened he told the police he did not know S.P. Other evidence was elicited that tended to impair his credibility and his defense.
This factual background is sufficient for the issues raised on this appeal. Defendant's first contention is that the trial judge committed reversible error in admitting the declaration made in the police car that he did not know S.P. Defendant contends that the statement was hearsay and was not admissible under Evid. R. 63(10) as a declaration against interest. Defendant contends that the erroneous admission *519 of this statement, which undermined the defense offered through his witnesses, was unduly prejudicial since it compelled him to take the stand in rebuttal, with obvious disadvantage. Cf. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Since we conclude that the testimony was properly admitted, we have no occasion to consider the issue of prejudice. We note in passing that the accumulation of properly admitted evidence threatening conviction of a defendant always tends to move him to shed his shield against self-incrimination and testify, but no violation of constitutional rights results from rules of evidence having this effect. Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).
The trial judge admitted this evidence, in rebuttal only, as a declaration against defendant's interest at the time it was made, purportedly in compliance with Evid. R. 63(10).[1] Defendant asserted then, and asserts now, that an admission of a party opponent can be put in evidence against that party only in a civil case as an exception to the hearsay rule provided by Evid. R. 63(7),[2] and not in a criminal case, unless it qualifies as a declaration against interest. Defendant further contends that defendant's statement denying that he knew or raped the complainant was exculpatory and was not a statement which "so far subjected him to * * * criminal liability * * * that a reasonable man in his position *520 would not have made the statement unless he believed it to be true * * *." Evid. R. 63(10).
The unfortunate failure to draft and adopt an acceptable proposal for Evid. R. 63(6)[3] to govern admissions of a defendant in criminal cases has caused unforeseen difficulty. Undoubtedly, the adoption of Evid. R. 63(7), applicable to civil cases only, has given the impression to some that extrajudicial statements of a defendant in a criminal case are not admissible unless they qualify as declarations against interest under Evid. R. 63(10). This fallacious view is encouraged by the coincidence that "most statements used as admissions do happen to state facts against interest," and accordingly, some have been "misled by this casual feature and treated admissions in general as obnoxious to the hearsay rule, and therefore as entering only under the exception to that rule for declarations against interest." 4 Wigmore, Evidence (Chadbourn rev. 1972), § 1049 at 9. See Supplemental Report of N.J. Sup. Ct. Comm. on Criminal Practice, 98 N.J.L.J. 435 (1975) (proposing amendments to Evid. R. 63(7) and Evid. R. 8(3) to cure the absence of an admissions rule for criminal cases); cf. State v. Thompson, 59 N.J. 396, 408-410 (1971); State v. Mayberry, 52 N.J. *521 413, 422 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Kuske, 109 N.J. Super. 575, 588 (App. Div. 1970).
The view that the declaration against interest rule is not coincident with and was not intended as a surrogate for the rule on admissions of a party, and should not be so employed, has been stated by Professor Alexander Brooks (Supplemental Report, supra) who had served as the reporter for the Supreme Court Committee which revised the rules of evidence (Report of N.J. Sup. Ct. Comm. on Evidence (1963), at 6). Simply put, not all statements of a party are against their interest when made, although they may later prove to be so. Obviously, the original proposals for Rule 63(6), dealing with statements of an accused in a criminal proceeding, and Rule 63(7), dealing with statements by a party or his representative in a civil action, exhibit an intention[4] to distinguish extrajudicial statements of parties from extrajudicial statements of non-parties governed by Rule 63(10).
The basic issue is whether an ordinary, out-of-court statement of a defendant, considered hearsay when offered to prove the truth of the matter asserted (Evid. R. 63), is admissible against him if it was not against his penal or pecuniary interest when made. We assume, of course, the absence of privilege or any other exclusionary factor, such as involuntariness. The argument advanced is that the adoption of Evid. R. 63(7), limited to civil cases, and the failure to adopt the proposed Rule 63(6), applicable *522 to criminal cases, reflects an intention to preclude the admission of noninculpatory statements of a defendant.
There are cogent reasons for rejecting this contention. The new rules of evidence were a codification of, and, to some extent, a liberalization of pre-existing New Jersey law. Prior to their adoption there was no question that a criminal defendant's out-of-court declarations were admissible against him, although it had been held that, upon request, instructions to the jury should be given to consider and weigh such evidence with caution because of "inherent weaknesses in this character of testimony." State v. Kociolek, 23 N.J. 400, 421 (1957). "Statements made out of court by a party-opponent are universally deemed admissible, when offered against him." 4 Wigmore, Evidence, supra, § 1048 at 2. One reason advanced for this exception to the hearsay rule is that the party who has made the out-of-court statement cannot complain of his inability to confront and cross-examine the declarant, since he himself is the declarant. 4 Wigmore, Evidence, supra, § 1048 at 4; Morgan, Basic Problems of Evidence (1962), at 266; McCormick, Evidence (2 ed. 1972), § 262 at 629.[5]
It seems incomprehensible that this universally accepted rule of evidence would be abrogated without an explicit statement of intention to do so. When a similar argument was made, that Evid. R. 20 was adopted without an exception for the fresh complaint doctrine, our Supreme Court rejected the argument, saying that the doctrine, "traditionally" applied in rape and morals cases, was not inconsistent *523 with Evid. R. 20, since it allowed proof "to meet in advance" a charge of recent fabrication. State v. Tirone, 64 N.J. 222, 226-227 (1974).
The failure to adopt proposed Rule 63(6) was due to uncertainty in codifying the constitutional exclusionary rules (Miranda v. Arizona, supra; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)) which were in apparent stages of development. State v. Magee, 52 N.J. 352, 371 (1968), cert. den. 393 U.S. 1097, 89 S.Ct. 891, 21 L.Ed.2d 789 (1969).[6] See Supplemental Report, supra.[7] The entire comment accompanying proposed Rule 63(6) concerns the voluntariness of "confessions and admissions" obtained by threats or during an illegal detention. Report of N.J. Sup. Ct. Comm. on Evidence, supra at 157-161. We have found no record of any recommendation to abolish the established rule governing admissions of *524 a party-opponent in criminal cases. In fact, prior attempts to revise and codify the law of evidence in New Jersey preserved the rule. Report of the Comm. on the Revision of the Law of Evidence to the N.J. Sup. Ct. (1958), Rule 63(6) at 132-134; Report of the Comm'n to Study the Improvement of the Law of Evidence, Including Uniform Rules of Evidence Proposed by It to the Senate and General Assembly of the State of New Jersey (1956), Rule 63(6) at 57;[8] see Uniform Rules of Evidence (1953), Rule 63(6) at 201.
It would violate the spirit of the new rules of evidence, expressed in Evid. R. 5 ("The adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained"), to hold such evidence inadmissible. State v. Hampton, 61 N.J. 250, 271 (1972). Accordingly, we hold that the common law rule continues in effect, namely, that extrajudicial declarations of a defendant are admissible against him in a criminal proceeding, subject to other exclusionary rules such as those which exist to protect privileged statements and constitutional rights. This merely continues in effect what is a matter of common knowledge, and part of the Miranda warnings, namely, that anything an accused says may be used against him. This court, in State v. Kuske, supra, acknowledged the continuation of this rule when it held that letters written by a defendant should have been admitted when offered on the State's case since they were "competent as admissions or admissions against interest." 109 N.J. Super. at 588. Evid. R. 63(10) was cited as authority for the introduction of the letters as admissions against interest, but the court had to rely on § 113 of McCormick, Evidence (1954) as *525 authority for the introduction of the letters as mere admissions.
Defendant raises other points on this appeal which we find also lacking in merit. These include the contention that two color photographs were introduced without producing the photographer to testify that the photographs were not retouched. (Black and white photographs of S.P. were introduced without objection.) A photographer need not be produced if a witness can testify that the photograph accurately depicts the subject as it appeared at a relevant time. Kellem v. Akers Motor Lines, Inc., 133 N.J.L. 1, (E. & A. 1945); Haring v. Banks, 7 N.J. Misc. 605, 607, 146 A. 675, 676 (Sup. Ct. 1929), aff'd o.b. 106 N.J.L. 569 (E. & A. 1930); see Garafola v. Rosecliff Realty Co., Inc., 24 N.J. Super. 28, 42 (App. Div. 1952); but cf. Balian v. General Motors, 121 N.J. Super. 118, 125 (App. Div. 1972), certif. den. 62 N.J. 195 (1973) (as to the requisites for authentication of motion pictures). Although the witness was not asked if the photographs accurately depicted her appearance at the time they were taken, her testimony implied as much, and this failing was not the reason given for the objection. The photographs were offered primarily to show that S.P.'s hair style was not a red "Afro" as described by a defense witness. As for their color, we find that their admissibility was within the discretion of the trial judge and that no reversible error occurred, particularly since S.P. testified in detail, on cross-examination, as to her hair color. State v. Macon, 57 N.J. 325, 340 (1971).
Defendant also complains of the trial judge's response to a question from the jury during their deliberations. The jury asked what the testimony showed as to the time S.P. arrived at the post office on December 19, 1971. After reviewing the evidence with counsel, the trial judge indicated how he would answer the question. No objection was voiced before and no exception was taken after the judge's instructions. *526 Now, on appeal, it is urged that there was other evidence on the issue which the judge omitted. However, the trial judge instructed the jurors to rely on their own recollection despite his review of the significant testimony. We see no error here.
Lastly, defendant contends that improper comment by the prosecutor denied him a fair trial. We agree that the prosecutor's reference in summation to defendant's affirmation rather than his taking the oath was reprehensible. See Hong Sai Chee v. Long Island R. Co., 328 F.2d 711 (2 Cir.1964). Fortunately, the trial judge immediately interrupted the prosecutor and stated:
THE COURT: No, Mr. Prosecutor, that is an improper remark and the Jury will disregard it. This man has a perfect constitutional right to take an affirmation as opposed to an oath and you are not to remark on that again.
We share the view expressed by our highest court that such conduct deserves harsh censure. State v. Spano, 64 N.J. 566, 568-569 (1974). The seriousness of the wrong may be understood in the light of defendant's contention that the comment was an insidious appeal to religious prejudice. (Defendant contends this was also evidenced by previous interrogation on the subject of defendant's membership in a Mosque and his use of "X" as a nickname; but these questions were relevant to the identification of defendant which S.P. gave to the police.) Nevertheless, the prompt intervention by the trial judge, his rebuke of the prosecutor and his curative instruction to the jury were sufficient to protect defendant's right to a fair trial in this case. See State v. DiPaglia, 64 N.J. 288, 296-297 (1974); State v. Bogen, 13 N.J. 137, 141-142 (1953).
Defendant criticizes other comments by the prosecutor in summation, criticism that was shared by the trial judge in one instance when he sustained defendant's objection. In that instance the prosecutor immediately apologized *527 for attempting to use the high school year book for a purpose beyond that for which it was introduced. See State v. Bogen, supra. Complaint is also made of the prosecutor's reference to the common experience that stories passed from person to person tend to be inaccurate and to his suggestion that one defense witness was "supposed" to suggest an alibi. The former remark was an acceptable reference to a matter of common knowledge, and the latter did not present an impermissible inference from the evidence. See State v. Perry, 128 N.J. Super. 188, 191 (App. Div. 1973), aff'd 65 N.J. 45 (1974). We also find no merit, and some distortion, in defendant's complaint about the factual references made by the prosecutor to testimony given by two post office employees. In any case, not every misstatement of evidence justifies reversal, particularly when the judge's charge, as here, instructs the jury that comment of counsel and the court on the evidence is not binding and that the jurors should rely on their own recollection. See State v. Knight, 63 N.J. 187, 193 (1973).
Defendant complains of the prosecutor's reference to an absent witness, the friend whom defendant said he intended to introduce to S.P. No objection was made to the comment, and we find no plain error. R. 2:10-2; State v. Macon, supra, 57 N.J. at 336. Therefore, we need not consider whether comment on the absence of a witness is improper if a request for an adverse inference charge has not first been made and ruled upon favorably. See State v. Clawans, 38 N.J. 162, 170-172 (1962); cf. Biruk v. Wilson, 50 N.J. 253, 259-261 (1967).
The judgment of conviction is affirmed.
FRITZ, J.A.D. (concurring).
I am in accord with the majority determination to affirm, but I cannot concur in the holding of that opinion that insofar as the hearsay exclusion is concerned, any relevant statement made by a defendant in a criminal action is admissible. The persuasiveness *528 of the presentation by the majority is most compelling and seductive, especially in its appeal to reason and to that prime mover of the judicial system, the search for the truth. But to succumb to its blandishments is, I respectfully submit, a usurpation of the rule-making function not at all justified by Evid. R. 5 or any other intermediate appellate court prerogative known to me. Were it to be done by the Supreme Court (as I devoutly hope it might be because I am indeed totally satisfied with the rationality of the reasons advanced for not including such declarations within the exclusionary rule), it could be understood as being authored in any event by those whose duties include a pure promulgation of such rules.
I doubt the statement of the majority that prior to the adoption of the new rules of evidence "there was no question that a criminal defendant's out-of-court declarations were admissible against him" (emphasis supplied). State v. Kociolek, 23 N.J. 400, 421 (1957) does not stand for the proposition: there it was "admissions"  presumably against interest  which were involved, and the majority and I agree that historically these have always been an admissible exception to the exclusionary hearsay rule.
Be this as it may, I am one who holds to that which the majority describes as the "fallacious view" that "the adoption of Evid. R. 63(7), limited to civil cases, and the failure to adopt the proposed Rule 63(6), applicable to criminal cases," together with the promulgation of Evid. R. 63(10), does indeed reflect inescapably "an intention to preclude the admission of non-inculpatory statements of a defendant."
Nonetheless, I would not reverse for at least two reasons. First, defendant's guilt is so abundantly apparent I have no difficulty at all concluding that beyond any reasonable doubt this error held no potential for an unjust result and was therefore harmless. State v. Macon, 57 N.J. 325 (1971). Additionally in this respect, it cannot be said to have denied defendant fairness in his trial, and therefore we should not *529 permit "[t]he question as to what is the truth [to become] lost in critical scrutiny of proceedings at a trial in order to determine whether the technical rules of evidence were or were not observed." State v. Doto, 16 N.J. 397, 405 (1954), cert. den. 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955).
Second, we might well justify the impugned hearsay as a statement against the interest of defendant declarant (Evid. R. 63(10)) on the assumption that when he made it he had the knowledge which was later articulated in his testimony, which knowledge contradicted the hearsay statement thereby making it one against his interest. For myself, I am so totally convinced of the harmlessness of any error that I need not go that far.
I, too, would affirm.
NOTES
[1] Evid. R. 63(10) provides:

"A statement is admissible if at the time it was made it was so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to a civil or criminal liability or so far rendered invalid a claim by him against another or created such a risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true, except that such a statement is not admissible against a defendant other than the declarant in a criminal prosecution."
[2] Evid. R. 63(7) provides:

"A statement made by a person who is a party to a civil action is admissible against him in that action."
[3] Rule 63(6), as proposed, read:

"In a criminal proceeding [as against the accused,] a previous statement [by him] relative to the offense charged made against himself by the defendant on trial, if, and only if, the defendant was promptly arraigned within the time required by law, and if [the judge finds that] the [accused] defendant when making the statement was conscious and was capable of understanding what he said and did, and that he was not induced to make the statement (a) under compulsion or by infliction or threats of infliction of suffering upon him or another, or by prolonged interrogation under such circumstances as to render the statement involuntary, or (b) by threats or promises concerning action to be taken by a public official [with reference to the crime,] likely to cause the [accused] defendant to make such a statement falsely [, and made by a person whom the accused reasonably believed to have the power of authority to execute the same]; Report of the N.J. Sup. Ct. Comm. on Evidence (1963), at 157. The italics indicate material added to and the brackets indicate material deleted from Rule 63(6) of the Uniform Rules of Evidence. Id. at 6."
[4] The last clause of Evid. R. 63(10), which was added to this rule as part of the revision of the proposed evidence prior to adoption, shows some confusion in fulfilling this intention. Evid. R. 63(10) was revised prior to adoption to exclude such statements when offered against a defendant in a criminal case unless the statement was made by the defendant himself. It is poorly written as: "except that such a statement is not admissible against a defendant other than the declarant in a criminal prosecution." Cf. Rule 63(10); Report of N.J. Sup. Ct. Comm. on Evidence (1963), at 168.
[5] Rule 506 of the Model Code of Evidence, promulgated by the American Law Institute in 1942, continued the common law rule that a "hearsay statement is admissible against the declarant * * * [who] is a party to the action * * *." Rule 801 of the Federal Rules of Evidence provides that an admission by a party-opponent which is offered against him is not hearsay. The rule applies to criminal and civil proceedings. Fed. R. Evid. 1101(b).

In United States v. Matlock, 415 U.S. 164, 172, 94 S.Ct. 988, 994, 39 L.Ed.2d 242, 250 (1974), citing both Wigmore and McCormick as authority, the court held that a defendant's "own out-of-court admissions would surmount all objections based on the hearsay rule."
[6] There it was said:

"It is common knowledge that Escobedo was the subject of much discussion in newspapers, law reviews, periodicals and on television and radio. But more significantly, this Court in 1965 pointed to the widespread belief in academic and other circles * * * that the Supreme Court * * * [would] in due course eliminate all confessions by unrepresented suspects in custody. [Citation omitted]. Although such a drastic innovation was not adopted, nevertheless the trend toward more protective measures to assure the voluntariness of confessions had become so apparent that the per se rule of exclusion could reasonably have been anticipated prior to its crystallization in Miranda. Moreover, long prior to Miranda our Court had declared that failure of the police to advise a suspect of his right to counsel is one of the factors to be considered on the issue of voluntariness of a confession." 52 N.J. at 371.
[7] The committee received correspondence on the history of the failure to adopt Rule 63(6) from Professor Brooks who stated:

"Because the U.S. Supreme Court at that time was evolving new rulings relating to the admissibility of involuntary statements (Escobedo & Miranda were yet to be decided), the New Jersey Supreme Court decided that it would be unwise at that time to adopt a rule dealing with involuntary statements. Proposed Rule 63(6) was deleted, but without an awareness that its deletion inadvertently resulted in the deletion of a rule providing for the admissibility of admissions in criminal cases without reference to the voluntariness issue." 98 N.J.L.J. 435.
[8] The Commission was established by Joint Resolution No. 15, (1955) of the Senate and General Assembly of New Jersey.