153 N.J. Super. 267 (1977)
379 A.2d 493
MICHAEL L. CAPEZZARO, PLAINTIFF-RESPONDENT,
v.
HENRIETTA WINFREY, CITY OF NEWARK, ANTHONY TROIANO, JOHN M. FARLEY AND JOHN F. GAVARNEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1977.
Decided October 13, 1977.
*269 Before Judges LORA, SEIDMAN and MILMED.
Mr. William J. Schwartz argued the cause for appellants (Mr. Milton A. Buck, Corporation Counsel of City of Newark, attorney).
Mr. Gerald W. Kolba argued the cause for respondent (Mr. John P. Boll on the brief).
PER CURIAM.
This is an appeal from a judgment upon a jury verdict against the City of Newark and certain of its police officers arising out of the return of money seized by the police from a robbery suspect, Henrietta Winfrey, after the indictment against her had been dismissed and notwithstanding that the victim of the alleged robbery, plaintiff Michael Capezzaro, had prior thereto claimed the money was his.
*270 The record shows that plaintiff reported to the police that he was robbed of $7,500 at gunpoint by a woman. The following day Henrietta Winfrey was arrested with a total of $2,480.66 in her possession. Capezzaro positively identified her as the woman who had robbed him and claimed the money found on her was part of that which she had taken from him. Winfrey was jailed and the money impounded by the police as evidence of the crime. Several months later Winfrey was indicted for the armed robbery of plaintiff. Approximately two years after the indictment was returned, upon motion by the prosecutor, this indictment, along with others against Winfrey was dismissed based upon medical opinion that she was unable to know right from wrong at the time she allegedly committed the crimes with which she was charged.
The police officers in charge of the department's property room were notified of the dismissal of the indictment by the warden of the county jail and thereupon released the money to Winfrey. Eventually plaintiff found out about the dismissal of the indictment and the release of the money to Winfrey and instituted this suit claiming that the money was his. At trial Winfrey, who could not be served, did not appear and the jury returned a verdict in favor of plaintiff and against defendants for $2,480.
On appeal defendants contend that (1) the trial judge erred in refusing to charge that the police department was a gratuitous bailee of the money for the bailor Winfrey and as such was liable only for bad faith or gross negligence, and (2) when the indictment was dismissed any claim made by plaintiff lost its validity and defendants-appellants were obligated to return the monies in question to the bailor.
It has been said that a constructive bailment or a bailment by operation of law may be created when a person comes into possession of personal property of another, receives nothing from the owner of the property, and has no right to recover from the owner for what he does in caring for the property. Such person is ordinarily considered to be a gratuitous *271 bailee, liable only to the bailor for bad faith or gross negligence. 8 Am. Jur.2d, Bailment, § 14 at 918 (1963); Weinstein v. Sheer, 98 N.J.L. 511, 514 (E. & A. 1922); Dudley v. Camden and Phila. Ferry Co., 42 N.J.L. 25, 27 (Sup. Ct. 1880). And see, Zuppa v. Hertz Corp., 111 N.J. Super. 419 (Cty. Ct. 1970) in which it is stated:
* * * It is the element of lawful possession, however created, and the duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based upon contract in the ordinary sense or not. Laidlaw, "Principles of Bailments," 16 Cornell L.Q. 286 (1931). [at 423]
Where possession has been acquired accidentally, fortuitously, through mistake or by an agreement for some other purpose since terminated, the possessor, "upon principles of justice," should keep it safely and restore or deliver it to its owner. Under such circumstances the courts have considered the possessions quasi-contracts of bailment or constructive and involuntary bailments. State v. Carr, 118 N.J.L. 233, 234 (E. & A. 1937).
Here the police seized and obtained custody of the money which was found in Winfrey's girdle during a search in her cell after her arrest on the robbery charge and after plaintiff claimed Winfrey had stolen it from him. It is undisputed that the money was being kept by the police as evidence for use in Winfrey's prosecution. It follows, then, that the City of Newark, through its police department was holding the money for its own benefit as well as for the benefit of its rightful owner.
Ordinarily, a person who has possession of property may be presumed by another to be the rightful owner thereof in the absence of any knowledge to the contrary. However, here the police were fully aware of plaintiff's adverse claim, but notwithstanding such knowledge and without notice to plaintiff turned the money over to Winfrey.
Neither counsel has cited to nor has our research unearthed any case directly on point. Thomas v. Grupposo, 73 Misc.2d *272 427, 341 N.Y.S.2d 819 (Civ. Ct. 1973), in which a plaintiff sought to recover money damages for the alleged wrongful sale of his motorcycle by the property clerk of the City of New York, is distinguishable. There plaintiff's motorcycle, after having been reported stolen, was recovered by the police and placed in a police warehouse or pound. Plaintiff was notified of its recovery, identified the vehicle at the pound and was advised to wait for its release. While he was so waiting the motorcycle was sold at public auction, allegedly by mistake, by the police property clerk for $700, a sum substantially less than its actual value.
The trial judge, in granting judgment for plaintiff for the reasonable value of the motorcycle, held that
* * * when the police property clerk recovered the motorcycle, it became a bailee, charged with the duty of exercising, if not reasonable care, at least some degree of care commensurate with the bailor-bailee relationship. The unexplained placing of the motorcycle in with other items which were being sold at public auction bespeaks of such carelessness and negligence as to constitute a breach of the bailment and to render the police property clerk liable for its loss. No attempt was made to introduce evidence to explain or excuse the breach of bailment, other than the plea of mistake. The mistake pleaded, standing by itself, is not an excuse or explanation, but rather an admission of gross negligence.
In view of the mutual benefit attendant upon custody of the money in the case before us, we find no error in the trial judge's refusal to charge that the police department was a gratuitous bailee. Moreover, we see no prejudice in the failure of the trial judge to charge specifically on the law of bailments since he did in fact instruct the jury on negligence, i.e., what a reasonable man would have done as custodian of the fund.
Defendants further contend that when the indictment was dismissed any claim by plaintiff lost its validity and they were obligated to return the monies in question to Winfrey as bailor. We disagree. A bailee with knowledge of an adverse claim makes delivery to the bailor at his peril, and only if he is ignorant of such a claim will he be protected against a *273 subsequent claim by the rightful owner. The position of a bailee in such situation and his possible courses of action are set forth in 9 Williston on Contracts (3 ed. 1967), § 1036 at 897-898:
* * * If a bailee knows goods are stolen, or that the bailor is acting adversely to a clearly valid right, even though the true owner has as yet made no demand for them, the bailee will be liable to him for conversion if delivery is made to the bailor. In case, therefore, that the bailee knows or has been notified of an adverse claim, he will deliver to the bailor at his peril. The bailee must, for his own protection, choose one of two courses:
First, he may satisfy himself of the validity of one of the two claims and obtain authority from the owner of the claim to refuse delivery to all other claimants. In such a case he may plead at law to an action by any but the rightful owner the title of the latter, or the right of one having a superior right to immediate possession. If this title or right can be proved, a perfect defense is established.
Second, if no actual adverse claim has been made, but the bailee knows of the existence of an adverse right, or if the bailee cannot determine which of two claimants has the better title, and neither claimant will give a bond indemnifying the bailee from all damage caused by delivery to him, the only course open to the bailee is to file a bill of interpleader against the several possible owners, praying a temporary injunction against actions against himself until the true ownership of the goods is determined.
And it should be added that a bailee who redelivers the goods to the bailor, or upon his order, in ignorance of his lack of title, is fully protected against subsequent claims of the rightful owner.
The police returned the money to Winfrey after being informed by the warden of the county jail that the indictments had been dismissed. They did not contact plaintiff before doing so, even though they were on notice of his adverse claim. The dismissal of the indictment for the reasons here present did not vitiate plaintiff's adverse claim to the money. Inherent in the jury's verdict is a finding that defendants were negligent in releasing the money without a determination of the validity of the adverse claim. Such finding and the verdict are amply supported by the evidence.
The judgment of the Essex County District Court is affirmed.