17 A.3d 826 (2011)
419 N.J. Super. 500
ONE STEP UP, LTD., Plaintiff-Respondent,
v.
SAM LOGISTIC, INC., and Simon Pang, Defendants-Appellants, and
Explore Trading, Inc., and Joe Zhang a/k/a Fuming Zhang, Defendants.
No. A-2494-09T3.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 2010.
Decided May 4, 2011.
*828 Kevin K. Tung argued the cause for appellants (Kevin Kerveng Tung, P.C., attorneys; Mr. Tung, on the brief).
Harlan M. Lazarus (Lazarus & Lazarus, P.C.), of the New York bar, admitted pro hac vice, argued the cause for respondent (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., and Mr. Lazarus, attorneys; Jeffrey A. Cooper and Mr. Lazarus, of counsel; Marc D. Miceli, Roseland, and Mr. Lazarus, on the brief).
Before Judges CARCHMAN, GRAVES and MESSANO.[1]
The opinion of the court was delivered by
GRAVES, J.A.D.
Defendants Sam Logistic, Inc. (Sam), and Simon Pang appeal from a final judgment entered on November 20, 2009, following a one-day bench trial. The court found defendants jointly and severally liable for conversion and awarded plaintiff One Step Up, Ltd., judgment in the amount of $244,584. We affirm.
Plaintiff is an importer and distributor of "off price" apparel goods. Pang is the owner and sole corporate officer of Sam, which owns and operates a public warehouse in Kearny, New Jersey. Explore Trading, Inc. (ETI), a seller of apparel products, stores its merchandise in Sam's warehouse and is owned by Joe Zhang.
Plaintiff and ETI had a business relationship in which all goods plaintiff purchased from ETI were "automatically delivered from the port to [Sam's warehouse]." Thereafter, ETI would notify Sam, usually by letter, of the transfer in ownership to plaintiff, and upon plaintiff's request, Sam would release goods from its warehouse to plaintiff or directly *829 to plaintiff's customers. According to Abraham Sultan, one of plaintiff's employees, the parties had passed "thousands" of cartons worth "millions" of dollars through Sam's warehouse in this fashion. Sultan further testified that during their "two years of dealing," there was never an issue regarding the release of goods from Sam's warehouse to plaintiff, and Sam never required authorization from ETI to release merchandise.
On December 20, 2007, plaintiff purchased $671,258 worth of merchandise (the goods) from ETI. At that time, ETI provided plaintiff with a signed letter that stated:
As of today, the goods listed on the attached packing list are sold to One Step Up. One Step Up will pick up the goods as soon as possible. Sam [Logistic] will not charge handling fees . . . to One Step Up. . . . [A]lthough owned by OSU [these goods] will be under [ETI's account] until removed from Sam Logistic.
Plaintiff immediately faxed the letter to Sam, and on December 20 and 28, 2007, Sam released a portion of the goods worth $70,408 to plaintiff. According to Sultan, Sam released the goods pursuant to a "verbal agreement" that followed receipt of the letter from plaintiff. By contrast, Pang testified that the goods were released only "upon the signature of Mr. [Zhang]."
On January 16, 2008, plaintiff requested that Sam release additional goods purchased from ETI, but Sam refused. When Sultan sought an explanation, Pang told him to contact ETI. Sultan testified he called Zhang and was told that "Sam should be delivering the goods." Nevertheless, Sam refused to do so, despite receiving another copy of the December 20, 2007 letter.
According to Pang, he did not release the goods to plaintiff because he never received a signed release from ETI. However, he admitted knowing that the goods sought by plaintiff had actually been sold by ETI to other parties. Pang also testified he believed the transfer from ETI to plaintiff had been cancelled, and ETI had refunded plaintiff's payment.
On January 28, 2008, plaintiff's counsel wrote a letter to Pang stating: "The goods must be released at once. Please immediately advise your consent." The letter also indicated that Sam's "continued refusal to release the goods to One Step Up, Ltd. [was] evidence of [its] continued bad faith." Pang responded the same day, stating that the goods requested by plaintiff were owned by ETI and would only be released with ETI's written consent.
Thereafter, plaintiff discovered that the goods had been removed from Sam's warehouse. At trial, Pang admitted that Sam had released the goods to other buyers on ETI's orders prior to January 28, 2008, notwithstanding the letter of December 20, 2007, confirming the sale to plaintiff.
Plaintiff subsequently filed a complaint against Sam, Pang, ETI, and Zhang for the value of the lost goods. Pursuant to a partial settlement agreement in April 2008, Sam released $90,288 worth of the goods to plaintiff, and plaintiff withdrew its claims against ETI and Zhang in exchange for payment of $265,978. However, plaintiff continued to pursue its conversion claims against Sam and Pang.
At trial on October 5, 2009, the court heard testimony from Sultan and Pang. The defendants presented three arguments: (1) plaintiff failed to provide Sam with a valid document of title to the goods; (2) without a valid title document or written authorization from ETI, Sam had no obligation to release the goods; and (3) *830 plaintiff waived any potential claim against Sam and Pang by settling with ETI and Zhang.
The court rejected all three arguments in an eleven-page written decision dated October 20, 2009, finding it "abundantly clear that the [December 20, 2007] letter was intended to memorialize in writing the sale of the stored goods to [plaintiff]." Therefore, it concluded that "the letter certainly [met] all of the statutory requirements necessary to establish that [plaintiff] had in its possession a `document of title' which gave it the legal authority to claim the stored goods from Sam." Given the history of plaintiff's business relationship with Sam and Pang, the court found it "disingenuous" for them to deny knowledge of plaintiff's legal title to the goods. Moreover, the court determined that written authorization from ETI "was never required prior to [Pang's] January 28, 2008 letter." Therefore, the court found Pang's testimony regarding "the release issue" incredible and described Sam's insistence on a "release order" from ETI as a "red herring."
In contrast, the court credited Sultan's testimony and found that plaintiff properly gave Sam notice of the transfer of the goods from ETI to plaintiff "as had been done on numerous [prior] occasions." It further found that Pang was "the only person involved in managing and directing all of [Sam's] business" and the only person with "authority to make the decisions necessary to manage and direct all of Sam's corporate affairs." The court determined that Pang improperly authorized the release of the goods to other buyers and was therefore personally liable for plaintiff's damages. On November 20, 2009, judgment was entered against Sam and Pang, jointly and severally, in the amount of $244,584.
Defendants raise the following arguments on appeal:
POINT I
THE COURT BELOW ERRONEOUSLY RULED THAT DOCUMENTS AND STATEMENT[S] CONCERNING CANCELLATION OF [THE] SALES AGREEMENT AND INSTRUCTION TO SIMON PANG NOT TO RELEASE GOODS WERE INADMISSIBLE HEARSAY EVEN THOUGH THESE STATEMENTS WERE ADMISSIBLE AS PARTIES' ADMISSION.
POINT II
THE COURT BELOW ERRONEOUSLY DISMISSED THE DEFENDANTS-APPELLANTS CROSS CLAIM AGAINST THE DEFENDANTS, EXPLORE TRADING INC. AND JOE ZHANG DUE TO [A] CLERICAL MISTAKE.
POINT III
THE COURT BELOW ERRONEOUSLY HELD THAT DEFENDANTS-APPELLANTS COMMITTED CONVERSION WHEN THE PLAINTIFF-RESPONDENT WAS NO LONGER THE OWNER OF THE GOODS AND DEFENDANTS-APPELLANTS' RELEASE OF GOODS WAS PURSUANT TO INSTRUCTION OF THE OWNER OF THE GOODS.
POINT IV
THE COURT OVERLOOKED AND MISUNDERSTOOD THE FACTS AND LAW THAT DEFENDANTS-APPELLANTS WERE NOT LIABLE FOR CONVERSION WHEN DEFENDANTS-APPELLANTS DELIVERED THE GOODS PURSUANT TO RECEIPT OR BILL OF LADING.
POINT V
PLAINTIFF-RESPONDENT ENTERED INTO [A] FINAL SETTLEMENT *831 AGREEMENT AND AGREED TO RELEASE ALL DEFENDANTS FROM LIABILITY; THEREFORE, [THE] JUDGMENT AGAINST DEFENDANTS-APPELLANTS MUST BE VACATED.
POINT VI
[THE] COURT BELOW MADE A MISTAKE IN CALCULATION OF DAMAGES AND [THE] JUDGMENT RESULTED IN [A] WINDFALL TO PLAINTIFF-RESPONDENT.
As an initial matter, we note that there is no evidence in the record that Sam and Pang filed a cross-claim for indemnification against ETI and Zhang. Therefore, we decline to review their arguments on this issue (Point II). See Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55, 843 A.2d 1069 (2004) (noting that a party's omission of a final order and transcript of proceedings prohibited review of her claim); Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assocs., 347 N.J.Super. 163, 177, 789 A.2d 138 (App.Div.2002) (stating that a party's failure to include documents critical to the appellate court's determination of the issue "render[ed] review impossible"). Moreover, we find no merit in defendants' assertion that plaintiff's claim is barred by its settlement with ETI and Zhang (Point V). R. 2:11-3(e)(1)(E).
In their first point, defendants assert that the court erred by excluding statements by ETI and Zhang. Defendants claim the excluded statements concerned the alleged cancellation of plaintiff's agreement with ETI and were admissible as statements by a party-opponent, N.J.R.E. 803(b)(1), and statements against interest, N.J.R.E. 803(c)(25). We do not agree.
"Hearsay" is defined as an out-of-court statement offered to prove the truth of the matter asserted. N.J.R.E. 801(c). Because hearsay is considered "untrustworthy and unreliable," State v. White, 158 N.J. 230, 238, 729 A.2d 31 (1999), it is generally inadmissible at trial. N.J.R.E. 802. Because defendants did not raise this issue at trial, we must determine whether the alleged error was "clearly capable of producing an unjust result." R. 2:10-2.
N.J.R.E. 803(b) permits introduction of an out-of-court statement by a party-opponent. "One reason advanced for this exception to the hearsay rule is that the party who has made the out-of-court statement cannot complain of his inability to confront and cross-examine the declarant, since he himself is the declarant." State v. Kennedy, 135 N.J.Super. 513, 522, 343 A.2d 783 (App.Div.1975) (citing 4 Wigmore on Evidence § 1048 (Chadbourne rev. 1972)).
Here, Zhang was not a party-opponent of defendants, either personally or as an agent of plaintiff. As previously noted, the record is devoid of any evidence of a cross-claim by defendants against ETI and Zhang. Moreover, defendants sought to use Zhang's statements against plaintiff rather than against ETI or Zhang himself. Therefore, the evidence is beyond the scope of the exception in N.J.R.E. 803(b)(1). See Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 803(b) (2010) (noting that admissions of a party-opponent are admissible only where offered against the speaker).
N.J.R.E. 803(c)(25) permits the introduction of
[a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made *832 the statement unless the person believed it to be true.
The statement-against-interest exception "is based on the theory that, by human nature, individuals will neither assert, concede, nor admit to facts that would affect them unfavorably." White, supra, 158 N.J. at 238, 729 A.2d 31. "[T]he declarant of a statement against interest does not have to be a party in order for the statement to be admissible," Biunno, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 803(c)(25) (2010), but the statement must have been against the declarant's interest at the time of its utterance, see, e.g., State v. Norman, 151 N.J. 5, 31, 697 A.2d 511 (1997).
Defendants offered no evidence to establish that Zhang's statements were against his interest. Therefore, we find that the statements were properly excluded by the trial court.
Sam and Pang next argue that because the contract between plaintiff and ETI was cancelled, plaintiff was no longer the rightful owner of the goods and thus could not recover for conversion. They also claim that they cannot be liable for conversion where the goods were delivered to other buyers in good faith "pursuant to the Bill of Lading issued by the defendant, Explore[] Trading, Inc." We reject both of these contentions.
As a bailee, a warehouseman is obliged to transfer possession of bailed goods to a rightful claimant who presents a document of title. N.J.S.A. 12A:7-403(1). According to the Uniform Commercial Code (UCC),
"[d]ocument of title" includes bill of lading, dock warrant, dock receipt, warehouse receipt, or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document shall purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.
[N.J.S.A. 12A:1-201(15).]
We agree with the trial judge's finding that the December 20, 2007 letter constituted a "document of title" under the UCC. Although the letter was not "issued by or addressed to" Sam pursuant to N.J.S.A. 12A:1-201(15), the UCC permits flexibility regarding the "issue, form or content" of a document of title. N.J.S.A. 12A:7-401(a). It is clear from the record that spontaneous communications like this letter were used by plaintiff, ETI, and Sam throughout their business relationship. Accordingly, the record supports the trial court's determination that plaintiff possessed "a `document of title' which gave it the legal authority to claim the stored goods from Sam."
Defendants also argue that the trial court erred in finding them "liable for the conversion of the stored goods." "[C]onversion is `the wrongful exercise of dominion and control over property owned by another [in a manner] inconsistent with the owners' rights.'" LaPlace v. Briere, 404 N.J.Super. 585, 595, 962 A.2d 1139 (App.Div.) (quoting Sun Coast Merch. Corp. v. Myron Corp., 393 N.J.Super. 55, 84, 922 A.2d 782 (App.Div.2007)), certif. denied, 199 N.J. 133, 970 A.2d 1049 (2009). A bailee is liable for conversion when it performs "`an unauthorized act of dominion over the bailor's property inconsistent with its rights in that property.'" Id. at 600, 962 A.2d 1139 (quoting Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J.Super. 501, 507, 727 A.2d *833 1026 (App.Div.), certif. denied, 161 N.J. 334, 736 A.2d 527 (1999)).
A party "need not knowingly or intentionally act wrongfully for a conversion to occur." Id. at 595, 962 A.2d 1139; see also Chicago Title Ins. Co. v. Ellis, 409 N.J.Super. 444, 456, 978 A.2d 281 (App.Div.) (noting that "[c]onversion does not require . . . intent to harm the rightful owner"), certif. denied, 200 N.J. 506, 983 A.2d 1113 (2009). Therefore, "a bailee will be liable for conversion due to its negligent conduct if the bailee `mistakenly destroys or disposes of the goods . . . although there is no intent to steal or destroy the goods.'" LaPlace, supra, 404 N.J.Super. at 600, 962 A.2d 1139 (omission in original) (quoting Lembaga, supra, 320 N.J.Super. at 507, 727 A.2d 1026).
N.J.S.A. 12A:7-404 excuses the misdelivery of bailed goods where made in good faith:
A bailee who in good faith including observance of reasonable commercial standards has received goods and delivered or otherwise disposed of them according to the terms of the document of title or pursuant to this Chapter is not liable therefor. This rule applies even though the person from whom he received the goods had no authority to procure the document or to dispose of the goods and even though the person to whom he delivered the goods had no authority to receive them.
According to the Legislature, this provision
states explicitly what is perhaps an implication from the old acts that the common law rule of "innocent conversion" by unauthorized "intermeddling" with another's property is inapplicable to the operations of commercial carriers and warehousemen, who in good faith and with reasonable observance of commercial standards perform obligations which they have assumed and which generally they are under a legal compulsion to assume.
[Uniform Commercial Code Comment to N.J.S.A. 12A:7-404 (West 2004).]
Where more than one person claims title to bailed goods, "the bailee is excused from delivery until he has had a reasonable time to ascertain the validity of the adverse claims or to bring an action to compel all claimants to interplead." N.J.S.A. 12A:7-603. We have previously summarized the options for a bailee facing adverse claims as follows:
"If a bailee knows goods are stolen, or that the bailor is acting adversely to a clearly valid right, even though the true owner has as yet made no demand for them, the bailee will be liable to him for conversion if delivery is made to the bailor. In case, therefore, that the bailee knows or has been notified of an adverse claim, he will deliver to the bailor at his peril. The bailee must, for his own protection, choose one of two courses:
First, he may satisfy himself of the validity of one of the two claims and obtain authority from the owner of the claim to refuse delivery to all other claimants. In such a case he may plead at law to an action by any but the rightful owner the title of the latter, or the right of one having a superior right to immediate possession. If this title or right can be proved, a perfect defense is established.
Second, if no actual adverse claim has been made, but the bailee knows of the existence of an adverse right, or if the bailee cannot determine which of two claimants has the better title, and neither claimant will give a bond indemnifying the bailee from all damage caused by delivery to him, the only course open to the bailee is to file a bill of interpleader *834 against the several possible owners, praying a temporary injunction against actions against himself until the true ownership of the goods is determined.
And it should be added that a bailee who redelivers the goods to the bailor, or upon his order, in ignorance of his lack of title, is fully protected against subsequent claims of the rightful owner."
[Capezzaro v. Winfrey, 153 N.J.Super. 267, 273, 379 A.2d 493 (App.Div.1977) (quoting 9 Williston on Contracts § 1036 (3d ed. 1967)).]
In this case, as the trial court correctly concluded, the December 20, 2007 letter put Sam and Pang on notice that plaintiff was the actual owner of the goods. Thus, when defendants were notified of an adverse claim, they were obliged to pursue the course of conduct prescribed by Capezzaro. They failed to do so. Furthermore, defendants failed to establish at trial that the contract between plaintiff and ETI had been cancelled. Therefore, given defendants' knowledge of plaintiff's claim, it is clear that they did not release the goods in good faith, and the exception set forth in N.J.S.A. 12A:7-404 does not apply. See Capezzaro, supra, 153 N.J.Super. at 273, 379 A.2d 493 (stating that a bailee who delivers goods to a bailor with knowledge of an adverse claim does so "at his peril").
Defendants' final argument is that the trial court miscalculated the damages owed. We find no merit in this contention, as there was uncontested proof that (1) the total value of the goods in the contract was $671,258; (2) plaintiff received $265,978 under their settlement with ETI and Zhang; and (3) plaintiff received merchandise from Sam worth a total of $160,696-$70,408 in December 2007 and $90,288 in April 2008. Therefore, the court properly determined that plaintiff was entitled to damages in the amount of $244,584. See Friedman v. Guffanti, 137 N.J.L. 195, 196, 59 A.2d 1 (E. & A.1948) (stating that "in an action of damages for conversion, the damages are limited to the value of the chattel converted, with interest from the date of conversion"); see also Tessmar v. Grosner, 23 N.J. 193, 202, 128 A.2d 467 (1957) (recognizing this principle).
We conclude from our examination of the record that there is sufficient credible evidence to support the trial court's findings and conclusions. Accordingly, we affirm substantially for the reasons stated by Judge Hector R. Velazquez in his comprehensive written decision on October 20, 2009.
Affirmed.
NOTES
[1] Judge Messano did not participate in oral argument. However, the parties have consented to his participation in the decision.