Ambrosio **LARRANAGA**, Plaintiff,

v.

**MILE HIGH COLLECTION & RECOVERY BUREAU, INC., and Dale Sheen, Defendants/Third–Party Plaintiffs,**

v.

**ABQ FEDERAL SAVINGS BANK, Third–Party Defendant.**

**No. CIV 91–111 JC/RWM.**

United States District Court, D. New Mexico.

June 9, 1992.

Richard J. Rubin, Santa Fe, N.M., for plaintiff.

Robert J. Muehlenweg, David E. Brown, Alberto A. Leon, Poole, Kelly & Ramo, Albuquerque, N.M., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER[1]

CONWAY, District Judge.

THIS MATTER comes on for consideration of the Resolution Trust Corporation's (RTC)[2] Motion to Reconsider Amended Memorandum Opinion and Order, filed March 13, 1992. The Court, having reviewed the memoranda of the parties and the applicable law, and being otherwise fully advised in the premises, finds that the motion is well-taken in part and will be granted in part and denied in part.

On or about December 21, 1990, defendant Dale Sheen, an employee of defendant Mile High Collection & Recovery Bureau, Inc. (Mile High), repossessed the plaintiff's 1985 Ford LTD on behalf of ABQ Bank. Various items of the plaintiff's personal property were within the vehicle when it was repossessed by Mile High. On February 6, 1991, the plaintiff filed this action alleging that the repossession of the automobile was in violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (FDCPA), that the defendants violated the New Mexico Unfair Practices Act, N.M.Stat.Ann. §§ 57–12–1, et seq., and that the defendants committed the tort of conversion. On June 10, 1991, the plaintiff filed a motion for partial summary judgment on its FDCPA and conversion claims with respect to only the personal property within the automobile at the time of the repossession. On December 27, 1991, this Court entered a memorandum opinion and order granting the plaintiff's motion for partial summary judgment on these claims. *See Larranaga v. Mile High Collection and Recovery Bureau, Inc.,* 780 F.Supp. 780 (D.N.M.1991). Subsequently, the RTC has moved this court to reconsider its December 27, 1991 Amended Memorandum Opinion and Order.

### A. The FDCPA Claim

Under section 1692f of the FDCPA, debt collectors are prohibited from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; ...". 15 U.S.C. § 1692f(6)(A). Any "debt collector" who violates this subsection is strictly liable to the injured "consumer." *See Redhouse v. Quality Ford Sales, Inc.,* 523 F.2d 1, 2 (10th Cir.1975) and *Riveria v. MAB Collections, Inc.,* 682

---

1. This memorandum opinion amends and replaces the Court's May 26, 1992 memorandum opinion addressing the same motion, and that opinion is hereby withdrawn.

2. The RTC is acting in its capacity as Receiver of ABQ Federal Savings Bank.

F.Supp. 174, 175 (W.D.N.Y.1988). All parties agree that the plaintiff is a "consumer" and that the defendants are "debt collectors" within the meaning of the statute.

█ In its motion to reconsider the RTC argues that subsection 6(A) of § 1692f of the FDCPA is solely concerned with *"property claimed as collateral."* Thus, according to the third-party defendant, § 1692f(6)(A) prohibits only the taking of any nonjudicial action to effect dispossession of *collateral* when there is no present right to possession of that *collateral.* Under this reading of the statute, the FDCPA does not prohibit the "incidental possession of property not claimed as collateral through an enforceable security interest." RTC Memorandum in Support of Motion to Reconsider at 5. Since it is undisputed that ABQ claimed only Mr. Larranaga's Ford LTD as collateral, the RTC argues that the FDCPA does not apply to the "incidental" taking of the personal property within the car at the time that it was repossessed.

As both parties acknowledge, this is an issue of first impression. After carefully reviewing the statute and the relevant authorities, the Court agrees with the RTC that subsection 6(A) of § 1692f applies only to property claimed as collateral. The Court's original reading of the statute renders the phrase "claimed as collateral" following the word "property" mere surplusage.[3] The Court finds neither the relevant Senate Report nor the FTC letter cited by the plaintiff to be inconsistent with this interpretation of the statute.

█ In his original motion for summary judgment, the plaintiff also argued that the defendants violated § 1692f(6)(C) of the FDCPA. The Court did not address this issue in its earlier opinion. Subsection 6(C) of § 1692f prohibits the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6)(C). The plaintiff contends that the personal property in his automobile was exempt pursuant to N.M.Stat. Ann. § 42–10–2. In relevant part that statute states: "Personal property other than money in the amount of five hundred dollars ($500) ... may be held exempt from receivers or trustees in bankruptcy or other insolvency proceedings, executors or administrators in probate, fines, attachment, execution or foreclosure by a judgment creditor." N.M.Stat.Ann. § 42–10–2. The Court agrees with the RTC that this statute is not applicable to the facts of this case and that therefore the defendants did not violate subsection 6(C) of § 1692f of the FDCPA.

### B. Conversion Claim

█ Under New Mexico law, conversion, is the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance of the owner's right thereto; or an unauthorized and injurious use thereof; or the wrongful detention after demand therefor by the owner.

*Newman v. Basin Motor Co.,* 98 N.M. 39, 42, 644 P.2d 553, 556, (Ct.App.1982). It does not appear that the New Mexico courts have directly addressed the precise issue presented by the facts of this case. Other states have indicated that under these circumstances a debt collector's acts may constitute the tort of conversion. *See Ford Motor Credit Co. v. Cole,* 503 S.W.2d 853, 855–56 (Tex.Civ.App.1973) ("no doubt that [plaintiff] would be entitled to maintain a suit for the value of" unsecured personal property "converted by Ford" when it repossessed his car); *cf. Ford Motor Credit Co. v. Herring,* 589 S.W.2d 584, 586 (Ark.1979) (implying that absent consent to take personal property within automobile at time of repossession, plaintiff would have stated claim for tort of conversion); *Jones v. General Motors Acceptance Corp.,* 565 P.2d 9, 11–12 (Okla.1977) (same). Although not exactly on point, this Court

---

**3.** Compare the likely result were the statute to prohibit the dispossession of property when "there is no present right to possession of the property [ ] through an enforceable security interest." As is evident, the best interpretation of the statute as it is written is to interpret the words "claimed as collateral" as words of limitation.

believes that *Newman* controls the outcome here.

In *Newman* the defendant repossessed a truck and the trailer attached to it. Only the truck was subject to a security interest. The defendant contended that it had a right to repossess the trailer because it was attached to the truck. The trial court ruled that the defendant was liable for conversion of the trailer and the Court of Appeals affirmed, finding that the defendant had been in "wrongful possession" of the trailer. The Court of Appeals ruled that the right to repossess the secured property (the truck) did not entitle the creditor to take possession of the attached unsecured property (the trailer). Furthermore, the court rejected the defendant's argument that it was not liable because the plaintiff failed to establish that there had been a "wrongful detention after demand therefore by the owner." *See Newman v. Basin Motor Co., supra,* 98 N.M. at 42–43, 644 P.2d at 556–57.

The RTC challenges the Court's application of *Newman* to this case and its conclusion that the defendants committed the tort of conversion when they took possession of the personal property located inside the automobile at the time it was repossessed. According to the RTC, the defendants were entitled to take possession of the personal property within the automobile as an incident of their right to pursue the self-help remedy of repossession. The RTC cites no cases in support of this proposition. Rather, the RTC relies on dicta in *Newman* and the essentially unrelated case of *Taylor v. McBee,* 78 N.M. 503, 433 P.2d 88 (Ct.App. 1967), to argue its position by analogy.

After holding that repossession of the unsecured property attached to the secured property constituted the tort of conversion, the *Newman* court rejected the contention that it would have been impossible to detach the trailer from the tractor. *See Newman v. Basin Motor Co., supra,* 98 N.M. at 43, 644 P.2d at 557. The RTC argues that this cursory paragraph, devoid of discussion and entirely set apart from the thorough discussion of the law of conversion preceding it, establishes the principle

that whenever it is practically difficult to separate unsecured property from secured property, a creditor is entitled to take the former when repossessing the latter. According to the RTC, this inference is bolstered by the ruling in *Taylor v. McBee.*

In *Taylor v. McBee* the plaintiff sued the defendant for conversion of some medical charts. Taylor and McBee had shared an office, during which time they mixed their medical charts together in the office's filing cabinets. The Court of Appeals ruled that by virtue of this "commingling" McBee had come into lawful possession of Taylor's files, and could not be liable for conversion until such time as he refused to return them after Taylor's demand. *See Taylor v. McBee, supra,* 78 N.M. at 506.

*Taylor v. McBee* is not concerned with the difficulty of separating secured and unsecured property. To the contrary, *Taylor* simply stands for the proposition that when two or more individuals freely and voluntarily mix their personal property together such that by joint agreement one individual effectively exercises possession and control over all of the property, one cannot later claim that the individual in possession of the property is liable for conversion until such time as the individual in possession refuses to return such property after demand. Thus, *Taylor* should not be read to transform an inference based on the *Newman* dicta into a controlling rule of law.

The RTC also argues that the plaintiff consented to the defendants' allegedly tortious acts. Specifically, the RTC contends that the loan agreement signed by Mr. Larranaga waived any conversion claim he might have as a result of the defendants' efforts to repossess the collateral in the event of a default. In support of this contention, the RTC cites the following language from the agreement: "we have all the rights of repossession provided by the Uniform Commercial Code. We can peacefully take immediate possession of the security. You agree to produce the security at a reasonable time and place for repossession." RTC's Exhibit D. This language does not constitute consent to take

possession of any personal property within the automobile in the event that the creditor chooses to repossess the collateral. Instead, it simply imposes an affirmative duty on the debtor "to produce the security at a reasonable time and place for repossession." It cannot be fairly said that a debtor who fails to fulfill this duty has agreed to allow the creditor to take possession of any personal property left inside the automobile, and the RTC cites no cases in support of this theory.[4]

Under *Newman* the plaintiff is entitled to summary judgment on his conversion claim. This ruling will not impose a great hardship on secured creditors or impair their right to the self-help remedy of repossession. First, the threat of similar lawsuits is simply a cost of doing business that can be passed on to the consumer. Second, creditors may be able to insulate themselves from liability by inserting a consent clause in their loan agreements.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

1. The RTC's Motion for Reconsideration be, and hereby is, granted in part and denied in part.

2. This Court's Amended Memorandum Opinion and Order of December 27, 1991 be, and hereby is, withdrawn.

3. Plaintiff's Motion for Partial Summary Judgment be, and hereby is, denied with respect to his FDCPA claim.

4. Plaintiff's Motion for Partial Summary Judgment be, and hereby is, granted with respect to his conversion claim.

---

**4.** It is evident that creditors who seek to insulate themselves from liability for conversion understand the language necessary to protect themselves. For instance, the following waiver was included in the agreement at issue in *Newman:* "Seller may take possession of any other property in the hereinbefore-described motor vehicle at time of repossession, whenever such other property may be therein, and hold same for buyer at buyer's risk without liability on the part of seller, buyer to be liable for any charges for storing such property incurred by seller." *Newman v. Basin Motor Co., supra,* 98 N.M. at 42, 644 P.2d at 556.