## STATE OF CONNECTICUT *v.* ALBERT INDRISANO
## (10659)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued June 11—decision released September 22, 1992

*Sally S. King,* with whom, on the brief, was *Leny K. Wallen-Friedman,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Warren Murray,* assistant state's attorney, for the appellee (state).

NORCOTT, J. This case involves an attempt by the defendant to effect a peaceful, self-help recovery of a copy machine, which resulted in his being convicted of disorderly conduct and fined $250.

In this appeal from the judgment of conviction for violating General Statutes § 53a-182,[1] the defendant claims that (1) the statute is unconstitutionally vague on its face and as applied to this case, (2) the evidence presented at trial was insufficient to support his conviction, (3) the trial court improperly rejected his claim of permissible use of force in defense of stolen property, and (4) the court improperly excluded certain statements on grounds of hearsay. We affirm the judgment of the trial court.

The following facts offer a rare glimpse into the trials and tribulations of the modern day "repo man." On September 26, 1988, David Andrews Printing, a Norwalk business, entered into a lease agreement with the Eaton Financial Corporation of Massachusetts for the use of a copy machine. The agreement provided, inter alia, that Eaton, as lessor, retained the right to repossess the machine in the event that Andrews defaulted on the required payments. After Andrews compiled a history of delinquent payments, Eaton gave notice in January, 1991, that the Norwalk business was again late in making payment and demanded the return of

---

[1] General Statutes § 53a-182 (a) provides in pertinent part: "A person is guilty of disorderly conduct when, with the intent to cause inconvenience, annoyance . . . or recklessly creating a risk thereof, he: (1) Engages in . . . violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct annoys or interferes with another person; or (3) makes unreasonable noise . . . ."

the copier. Eaton then instructed the defendant either to collect the outstanding debt or to repossess the machine. On January 22, 1991, the defendant traveled to Norwalk to carry out his instructions.

Andrews' office space included a common area shared with another tenant, Bonnie Orgovan. Andrews had placed the copy machine in this common area for its exclusive use. At 10 a.m., the defendant entered the common area and encountered Orgovan. He explained that he had come to collect the overdue payments or, alternatively, take possession of the copier. Gordon Anderson, also present in the common area, testified that the defendant entered the room waving a clipboard and that he was "very strident." Orgovan then explained to the defendant that the owners were unavailable but would return shortly.[2] Orgovan resumed her work and left the defendant in the common area with Anderson and the copy machine.

The defendant then telephoned Eaton and, after receiving permission to repossess the machine, unplugged it and began dragging it backward toward the door. When Orgovan realized what the defendant was doing, she reentered the common area, demanding that he await the return of Andrews' owners. Moreover, she positioned herself between the defendant and the door, which she locked, to prevent him from leaving with the copier. At this point, the defendant exclaimed, "God damn, I don't have to wait. God damn it!" Directing his attention to Anderson, the defendant said, "You, old man, stay out of this." Determined to leave, however, the defendant physically wedged Orgovan away from the door by using his shoulders and buttocks. As soon as this physical contact ensued,

---

[2] According to the defendant, Orgovan advised him to return to the building in half an hour at which time the owners would be available. On the other hand, Orgovan testified that she told the defendant to wait ten minutes.

Anderson called the police and the confrontation imme-
diately ceased.[3] The entire incident lasted about ten
minutes.

In resolving this matter, we note that the right to
peaceful, self-help repossession of goods has a long his-
tory in the common law. See generally J. McCall, "The
Past as Prologue: A History of the Right to Repossess,"
47 S. Cal. L. Rev. 58 (1973). Private self-help reme-
dies extend as far back as ancient Greece, where those
entitled to seize chattels from a debtor were not pro-
hibited from breaching the peace or physically injuring
the debtor in the course of repossession. See F. Pring-
sheim, The Greek Law of Sale (1950) pp. 286–87. Early
Roman law permitted similar self-help remedies, includ-
ing the right to seize the person of a debtor, without
court action, after a default in payment. See W. Buck-
land, A Manual of Roman Private Law (1939) p. 352.
Later, the right to repossess goods was recognized in
the common law of England. See 2 W. Blackstone,
Commentaries (Jones Ed. 1916) p. 1490 n.2; F. Pollock
& F. Maitland, The History of English Law (2d Ed.
1923) p. 574.

Today, the same common law principle is embodied
in General Statutes § 42a-9-503,[4] which permits a
secured party to forgo the judicial process and resort

---

[3] At trial, there was conflicting testimony as to how the police became
involved. Both Orgovan and the defendant insist that they initiated Ander-
son's call to the police. Orgovan testified on direct examination that she
asked Anderson to call 911. On cross-examination, she testified that the
defendant had not requested the presence of the police. On the other hand,
the defendant testified as follows: "I told [Orgovan] to call the police. She
then turned to one of the gentleman there. She told him to call 911, and
that was it."

[4] General Statutes § 42a-9-503 provides in pertinent part: "Unless other-
wise agreed a secured party has on default the right to take possession
of the collateral. In taking possession a secured party may proceed with-
out judicial process if this can be done without breach of the peace or may
proceed by action."

to self-help repossession, but without breaching the peace. Enticing as this mode of recovery may be to creditors, nonjudicial repossession nevertheless presents "an element of inherent danger." *Sanchez* v. *MBank of El Paso,* 792 S.W.2d 530, 532 (Tex. App. 1990). Because the repossessor may commit a trespass in attempting to recover goods without the owner's consent and, often, against his will, there is a considerable risk that breach of the peace, assault or other violence may occur. Id. With this brief historical background in mind, we commence our analysis.

The defendant first claims that General Statutes § 53a-182, our state's disorderly conduct statute, is unconstitutionally vague on its face and as applied to the facts of this case.

Although the defendant's vagueness challenge was not distinctly raised at trial, his claim of unconstitutional vagueness falls within the parameters of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973), and therefore warrants some appellate scrutiny. *State* v. *Jones,* 215 Conn. 173, 179, 575 A.2d 216 (1990). *Golding* review, however, will not allow the defendant to prevail because the record is inadequate for a fair consideration of whether the statute is unconstitutionally vague.[5] *State* v. *Santiago,* 218 Conn. 483, 485, 590 A.2d 434 (1991). We therefore decline to review this claim.

---

[5] Under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional error beyond a reasonable doubt." (Emphasis in original.) The burden of providing an adequate record rests with the defendant. *State* v. *Leary,* 217 Conn. 404, 416,

The defendant next claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. We disagree.

This court has consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. First, we review the evidence in the light most favorable to sustaining the jury's verdict. Second, we determine whether, on the facts so construed and the inferences reasonably drawn therefrom, the jury could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991). Reasonable and logical inferences may be drawn, but the jury may not resort to speculation and conjecture. *State* v. *King,* 216 Conn. 585, 602, 583 A.2d 896 (1990). Each essential element of the crime must be proved beyond a reasonable doubt. Id., 601.

Here, the prosecution was obligated to establish two elements under General Statutes § 53a-182: "(1) that the defendant intended to cause, or recklessly created a risk of causing, 'inconvenience, annoyance or alarm' and (2) that he did so by engaging 'in fighting or in violent, tumultuous or threatening behavior . . . .' " *State* v. *Leavitt,* 8 Conn. App. 517, 522, 513 A.2d 744, cert. denied, 201 Conn. 819, 516 A.2d 886 (1986), quoting General Statutes § 53a-182 (a). As stated above, the prosecution established that the defendant resorted to cursing, screaming and physical force in attempting to remove Orgovan from the doorway and to repossess the copy machine. His alternative was to await the les-

587 A.2d 85 (1991). " 'If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim.' " *State* v. *Irving,* 27 Conn. App. 279, 284, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992), quoting *State* v. *Golding,* supra, 240.

sees' momentary return and then to discuss the obligations under the lease. Moreover, the defendant insisted on removing the copy machine despite being told of the owners' imminent return. On the basis of this evidence, the trial court properly concluded, beyond a reasonable doubt, that the defendant engaged in "violent, tumultuous or threatening behavior" with the intent to cause inconvenience or annoyance, or recklessly to create a risk thereof. See also *State* v. *Duhan,* 194 Conn. 347, 359–60, 481 A.2d 48 (1984) (affirming conviction under § 53a-182 based on defendant's yelling and cursing while at police station); *State* v. *Leavitt,* supra (affirming conviction under § 53a-182, where defendant yelled and screamed at daughter before inflicting physical harm).

The defendant's third claim is that the trial court abused its discretion in rejecting his claim of justification pursuant to General Statutes § 53a-21. In essence, the defendant attempts to dismiss his use of physical force as a necessary incident to what he perceived was an act of larceny on the part of Andrews. We are unconvinced.

Pursuant to § 53a-21, "[a] person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it necessary . . . to regain property which he reasonably believes to have been acquired by larceny . . . ." To support his claim of legal justification, the defendant invokes General Statutes § 53a-119 (13) (A), the larceny provision of our penal code, which forbids a lessee's sale or concealment of "leased personal property" when an agreement provides express terms specifying the *duration* of the lease and a *designated* place of return. In this case, the controlling lease is devoid of either of these terms and thus is not within the express language of § 53a-119 (13) (A). Thus, the terms of the lease support the trial court's decision to reject the defendant's asserted legal justification.

Moreover, the trial court found that the defendant's use of force was an unreasonable response to the actions of Orgovan.[6] This finding reflects the fact that Orgovan intended to ensure that her neighboring tenants had an opportunity to discuss the status of the copier. She urged the defendant to await the owners' return to which he vociferously refused. On these facts, the court properly concluded that a reasonable person would not have resorted to physical force.

The defendant's final claim is that the trial court improperly precluded him from testifying as to Orgovan's statements made to him at the time of the attempted repossession. We disagree.

The following additional facts are pertinent to our resolution of this claim. At trial, defense counsel sought to elicit testimony from the defendant concerning statements made to him by Orgovan during the incident at issue. When the state objected, the defendant argued that Orgovan's statements were being offered not for their truth, but to show their effect on him as the hearer. The court sustained the state's objection that the statements were hearsay. The court reasoned that defense counsel had an opportunity earlier to cross-examine Orgovan when she testified as the state's witness. The court found that because the defendant did not examine Orgovan as to the statements in question at that time, it was improper to elicit her statements from the defendant. Later, the defendant recalled Orgovan to testify.

---

[6] In the words of the court, "this whole confrontation could have been avoided had the defendant acceded to the wishes of one who apparently had some sort of connection, to simply wait ten or fifteen minutes for the owners to come in. . . . [T]he Court concludes that the conduct of Mrs. Orgovan was reasonable under these circumstances, and the use by the defendant in the exercise of what he claimed was reasonable force to regain the property, was unreasonable."

Our standard of review regarding challenges to a trial court's evidentiary rulings is clear. " 'Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' " *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990). "In reviewing claims that the trial court abused its discretion, 'the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did . . . .' *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979)." *State* v. *Paulino,* 26 Conn. App. 86, 92, 598 A.2d 666 (1991), cert. granted, 221 Conn. 907, 600 A.2d 1361 (1992). Further, when a constitutional violation is not at issue, the defendant bears the burden of demonstrating the harmfulness of the court's ruling such that it is more probable than not that it affected the trial's result. *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991).

We disagree with the trial court's conclusion that the proffered statements by Orgovan were hearsay. It is well settled that statements offered to show their effect on the hearer are not hearsay. See, e.g., *State* v. *Alvarez,* supra, 310. The statements here were sought to cast light on the motive and intent underlying the defendant's actions, and thus should have been admitted. Nevertheless, our review of the record leads us to conclude that the trial court's refusal to admit the statements was harmless. No prejudice or injustice inured to the defendant, and the result of the trial would not have been different had the statements been admitted. Further, Orgovan was still available to testify at the time and, in fact, was later recalled and examined by the defendant.

Finally, we note that although the defendant may have been entitled to repossess the copy machine in the

manner prescribed by article 9 of our commercial code, the right to engage in self-help does not license lessors and their agents to abuse physically any person in the course of repossession. See General Statutes § 42a-9-503.[7] While it is true that the law has long recognized the right to forgo often costly and time-consuming judicial procedures in favor of peaceful, self-help repossession of chattels, it must not be forgotten that this "freedom given creditors in repossession must be balanced with the need to avoid possibly violent confrontations . . . ." *Riley State Bank* v. *Spillman,* 242 Kan. 696, 703, 750 P.2d 1024 (1988).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Our independent research has failed to disclose case law in this jurisdiction construing the reference to breach of peace in General Statutes § 42a-9-503. Two commentators, however, have remarked upon the statute's reference to self-help as follows: "When the creditor repossesses in disregard of the debtor's oral protest, most courts find the creditor guilty of breach of peace. A rule that an oral protest is sufficient to foreclose nonjudicial repossession is wise because it does not beckon the repossessing creditor to the brink of violence." J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) § 26-6, pp. 110–11.