Vallorie CLARK

v.

AUTO RECOVERY BUREAU CONN., INC.

Civ. No. 5:91CV00294 (WWE).

United States District Court, D. Connecticut.

Sept. 27, 1994.

Joanne Faulkner, New Haven, CT, Herbert I. Mendelsohn, Law Offices of John R. Gamm, North Haven, CT, for Vallorie Clark.

Irwin J. Gordon, Trumbull, CT, for Auto Recovery Bureau Conn., Inc.

## MEMORANDUM OF DECISION

EGINTON, Senior District Judge.

Plaintiff, Vallorie Clark, brought this action alleging that defendant, Auto Recovery Bureau Conn., Inc., repossessed her automobile in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110a–q. Plaintiff also alleges liability for common law conversion. The case was tried to the Court in July, 1994. Pursuant to Fed.R.Civ.P. 52(a), the Court enters the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

Plaintiff and the University of Bridgeport Credit Union, Inc. ("Credit Union"), entered into a loan agreement through which plaintiff gave the Credit Union a security interest in a 1987 Saab. Plaintiff defaulted on her loan payments to the Credit Union. The Credit Union employed the services of defendant to repossess the Saab.

Defendant's principal business is the repossession of collateral for secured creditors. With respect to the repossession of cars, the defendant customarily deploys a two-member repossession crew. The crew members travel together in a tow truck to a given repossession site.

The defendant often uses a tow truck equipped with a towing mechanism known as the "Dynamic Auto Load System" (referred to as "the Dynamic towing system"). This towing device is particularly well-suited for defendant's business. It enables repossession crew members to hook up and remove a car in less than a minute. Moreover, the Dynamic towing system alleviates the need for crew members to get out of the truck. From the cab, crew members can attach a vehicle, lift the front wheels and tow the vehicle away. The towing device therefore diminishes the likelihood of a confrontation between repossession crew members and disgruntled debtors.

On May 13, 1991, at the instruction of the Credit Union, defendant attempted to repossess the Saab which was parked at plaintiff's residence. When plaintiff objected to the

repossession, defendant suspended its efforts and informed the Credit Union that plaintiff would not surrender the collateral.

On May 17, 1991, plaintiff attended a picnic on the campus of the University of Bridgeport. The Credit Union learned that plaintiff was at the picnic and that the Saab was parked nearby on a public street. The Credit Union informed defendant of the car's location and asked defendant to repossess it.

At the Credit Union's request, defendant's president, John Pellegrino, instructed two employees to repossess the Saab. A third person accompanied the employees of defendant. In a tow truck equipped with the Dynamic towing system, defendant's crew traveled to the site of the Saab. Operating the towing system from the cab, the crew members lifted the car's front wheels and towed it away. As the truck pulled away with the car, crew member William Bernacchia noticed plaintiff nearing the site of the repossession. He also saw another person, not connected with the repossession, restrain plaintiff. The crew drove away with the Saab in tow.

Inside the Saab were several items of personal property belonging to the plaintiff. In the course of the repossession, the crew members did not afford plaintiff a chance to recover her personal property from the Saab. Instead, they towed away the Saab and the personal property contained therein. Defendant later returned the Saab to the Credit Union, after which the Credit Union returned the personal property to plaintiff.

Plaintiff brought this action alleging that defendant unlawfully repossessed her car and unlawfully failed to return her personal property. She seeks statutory damages, compensatory damages for the replacement of personal property, emotional distress, embarrassment, danger and inconvenience, as well as punitive damages and attorney's fees.

## II. CONCLUSIONS OF LAW

### A. Fair Debt Collection Practices Act

Plaintiff first claims that defendant's repossession of the Saab constitutes an unfair debt collection practice in violation of the FDCPA. Defendant argues that because it is not a debt collector for purposes of the FDCPA, the statute is inapplicable. Neither position is entirely persuasive.

■ Repossession companies are ordinarily beyond the scope of the FDCPA. The exception to this general rule is set forth in section 1692f(6) which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6); *James v. Ford Motor Credit Co.*, 842 F.Supp. 1202, 1207 (D.Minn.1994); *Jordan v. Kent Recovery Serv., Inc.*, 731 F.Supp. 652, 654 (D.Del.1990).

■ The critical question under section 1692f(6) is whether defendant had a "present right" to the Saab via a valid security interest. This issue turns on the provisions of Article Nine of Connecticut's Uniform Commercial Code ("UCC"). *See, e.g., James*, 842 F.Supp. at 1207 (relying on Minn.Stat. § 336.9–503 to determine whether repossession agency exercised a "present right" to possession of collateral). Pursuant to section 42a–9–503 of the UCC, a secured party has a right on default to take possession of collateral. To exercise the right to take possession, the secured party "may proceed without judicial process *if this can be done without breach of the peace....*" *Id.* (emphasis added); *see also Parks v. Baldwin Piano & Organ Co.*, 262 F.Supp. 515, 519 (D.Conn.), *aff'd*, 386 F.2d 828 (2d Cir.1967). By orally protesting the repossession, a debtor can undermine the creditor's right to repossess collateral. *State v. Indrisano*, 29 Conn.App. 283, 292 n. 7, 613 A.2d 1375 (1992) (citing J. White & R. Summers, *Uniform Commercial Code* § 26–6, p. 110–11 (2d ed. 1980)), *rev'd on other grounds*, 228 Conn. 795, 640 A.2d 986 (1994).

■ In the present case, there is no dispute that the Credit Union had a valid and enforceable security interest in the Saab. Nor does plaintiff contest the fact that she was in default on her loan payments to the

Credit Union.[1] At the Credit Union's instructions, the defendant was entitled to take possession of the car without judicial process as long as the repossession did not engender a breach of peace. Conn.Gen.Stat. § 42a–9–503. If no breach of peace occurred, then defendant exercised a "present right" to possession in compliance with section 42a–9–503 of the UCC and section 1692f(6) of the FDCPA.

■ Turning first to the attempted repossession of May 13, 1991, the Court concludes that defendant acted appropriately. Defendant's repossession crew sought to repossess the Saab at plaintiff's residence. When plaintiff refused to surrender the car, the crew immediately aborted its efforts. No evidence was presented indicating that the attempted repossession precipitated any violent or disruptive behavior.

■ The repossession of May 17, 1991, is a closer question. Nevertheless, the Court is satisfied that defendant properly exercised its present right to possess the Saab. With the aid of the Dynamic towing system, defendant's repossession crew removed and towed the Saab without either of the three crew members leaving the truck. The crew members successfully avoided a confrontation with the debtor and thus a breach of peace. The Court concludes that defendant repossessed the Saab in accordance with section 42a–9–503 of the UCC. It follows that defendant exercised a present right to possession of the car in accordance with section 1692f(6) of the FDCPA.

Plaintiff insists that she objected to the repossession and that a physical confrontation ensued. This may be true. Nevertheless, to the extent that any protest or physical contact occurred, the evidence indicates that such conduct did not involve either of the three repossession crew members. Although plaintiff testified that *four* persons were involved in the repossession, one of whom was outside of the tow truck, the Court finds that just *three* persons were involved in the procedure. The fourth person who restrained plaintiff was not connected in any way with defendant's repossession of the Saab.

The evidence is inconclusive as to exactly why this fourth person restrained plaintiff. Presumably he was associated with the campus police as evidenced by his possession of a walkie-talkie; presumably he wanted to keep plaintiff from interfering with a moving tow truck. In either case, any confrontation that may have occurred involved plaintiff and a person whose actions cannot be imputed to defendant.

In addition, the objection and ensuing confrontation occurred *after* defendant repossessed the car. "Once a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been completed." *James,* 842 F.Supp. at 1209. While at the picnic, plaintiff learned from friends that her car was being towed away. By the time plaintiff arrived at the scene, the repossession crew had already removed the Saab from its parking place. It follows that defendant had sufficient control over the Saab before plaintiff voiced an objection to defendant's actions. Not only was the objection voiced to the wrong person, but it came too late. Defendant had already properly repossessed the Saab.

A similar result obtained in *James.* There, the defendant repossessed the plaintiff's car from a parking lot. An hour later, the plaintiff caught up with the defendant. After a scuffle and a breach of peace, the plaintiff regained control of the vehicle. The court determined that "once [the defendant] had control of the car the repossession was complete and [the plaintiff's] protest was to no avail." The court concluded that irrespective of the breach of peace, the defendant was not liable under the FDCPA. *Id.* The present case is similar. Any breach of peace that may have occurred did so *after* the defendant had control of the vehicle and therefore did not undermine the validity of the repossession.

---

1. In her reply brief, plaintiff introduces new evidence that she paid the Credit Union $1,208 toward her arrearage of $2,000 and that she did so before the repossession. Even if the court accepts this evidence, it remains undisputed that plaintiff was behind in her payments at the time defendant repossessed the Saab.

## B. *State Law Claims*

### 1. Connecticut Unfair Trade Practices Act

■ Plaintiff asserts that defendant violated CUTPA. Her claim is predicated on state regulatory language that parallels the statutory language of the FDCPA. She argues that a violation of the FDCPA automatically translates into a violation of CUTPA. She further claims that a violation of section 42a–9–503 will support a claim under CUTPA. Because the Court has concluded that defendant did not violate the FDCPA or section 42a–9–503, plaintiff's CUTPA claim necessarily fails.

### 2. Conversion

Plaintiff's final claim is one of common law conversion. Plaintiff contends that defendant committed the tort of conversion by assuming control over items of personal property that were in the Saab at the time of the repossession.

Conversion is defined as "[a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." *Moore v. Waterbury Tool Co.*, 124 Conn. 201, 209, 199 A. 97 (1938) (quotations omitted); *Aetna Life and Casualty Co. v. Union Trust Co.*, 230 Conn. 779, 790–91, 646 A.2d 799 (1994). There is no Connecticut case law exploring the relationship between a valid repossession of collateral and the incidental taking of personal property. However, other courts applying similar definitions of conversion have considered the issue. The consensus is that conversion may occur when a valid repossession of collateral results in an incidental taking of other property, *unless* the loan agreement includes the debtor's consent to the incidental taking. *Larranaga v. Mile High Collection & Recovery Bureau, Inc.*, 807 F.Supp. 111, 114–15 (D.N.M.1992); *see also Newman v. Basin Motor Co.*, 98 N.M. 39, 644 P.2d 553, 556 (App.1982); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855–56 (Tex.Civ.App.1973).

For example, in *Larranaga*, a defendant repossessed a car that contained several items of personal property belonging to the plaintiff. By repossessing the car, the defendant exercised dominion over the personal property to the exclusion of the plaintiff. After a review of the loan agreement, the court determined that the plaintiff had not consented to the defendant's possession of the personal property. The court concluded that the defendant was liable for conversion. *Larranaga*, 807 F.Supp. at 115.

■ The analysis in *Larranaga* applies with equal force to the present case. Defendant exercised *unauthorized* ownership of plaintiff's personal property to the exclusion of plaintiff. It is true that the Credit Union had a valid security interest in the Saab and, as noted, was entitled to repossess the vehicle. The loan agreement however is devoid of any indication that plaintiff consented to the taking of her personal property as an incident to the repossession of the Saab. Following the reasoning of *Larranaga*, the Court concludes that defendant committed conversion by taking plaintiff's personal property without her authorization.

■ Defendant maintains that by the terms of the loan agreement, plaintiff consented to the defendant's incidental possession of her personal property. Defendant points to language in the loan agreement that extends the scope of the security interest to "all subsequent improvements, additions [and] repair and replacement parts of every type and description. . . ." Notwithstanding defendant's interpretation, the clear import of this language is to allow for the repossession of alterations and additions integral to the collateral itself. The Court does not read this language as covering items of personal property, such as cash and clothing. Absent plaintiff's consent, defendant was not authorized to exercise ownership of plaintiff's personal property.

## III. *DAMAGES*

Plaintiff seeks statutory damages and attorney's fees under the FDCPA and punitive damages under CUTPA. As noted, defendant is not liable under either statute. The Court finds that plaintiff is not entitled to damages or attorney's fees under the FDCPA or CUTPA.

Plaintiff also seeks compensatory damages for the replacement of personal property, emotional distress, embarrassment, danger and inconvenience. Because defendant is liable for conversion, the Court finds that plaintiff is entitled to compensatory damages from defendant, though her damages are minimal.

 Defendant converted an umbrella, a raincoat, a purse containing $150, and a costume that plaintiff's son was to wear in an upcoming play. All of these items were returned to plaintiff. The only ascertainable loss to plaintiff was that caused by the temporary conversion of her son's costume. Plaintiff's son needed the costume for a school play. Because the costume was not returned until *after* the play, plaintiff expended $50 to replace it. The conversion of the costume necessitated a $50 outlay by plaintiff for which she is entitled to compensation. The court will not award any additional compensation for claimed emotional distress, embarrassment and inconvenience.

Finally, plaintiff seeks punitive damages on the basis of defendant's conversion of her personal property. Punitive damages are warranted if the evidence reveals a reckless indifference to the rights of others or an intentional ·and wanton violation of those rights. *Berry v. Loiseau,* 223 Conn. 786, 811, 614 A.2d 414 (1992). "In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Venturi v. Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983); *Ames v. Sears, Roebuck & Co.,* 8 Conn.App. 642, 654–55, 514 A.2d 352 (1986), *cert. denied,* 201 Conn. 809, 515 A.2d 378 (1987).

In the present case, defendant's conversion of plaintiff's personal property was not in reckless indifference to plaintiff's rights or so egregious as to warrant an award of punitive damages. As noted, the conversion was *incidental* to the proper repossession of the Saab. It is true that defendant should have known that the loan agreement between plaintiff and the Credit Union did not contain plaintiff's consent to the possession of personal property contained in the Saab. The Court however will not award

punitive damages on this basis. An award of $50 in compensatory damages is sufficient under the circumstances.

### CONCLUSION

For the reasons that follow, judgment shall enter for plaintiff on her claim of conversion in the amount of $50.00. Judgment shall enter for the defendant on the remaining claims under the FDCPA and CUTPA.