Michael **NADALIN**, Plaintiff–Appellant,

v.

**AUTOMOBILE RECOVERY BUREAU, INC.**, Defendant–Appellee.

No. 98–2601.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1999.

Decided March 12, 1999.

Daniel A. Edelman (argued), Edelman & Combs, Chicago, IL, for Plaintiff–Appellant.

John D. Lien (argued), Foley & Lardner, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

This is a class action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, against a company that repossesses motor vehicles as an agent of creditors who have a security interest. The appeal, which is from the dismissal of the suit for failure to state a claim, Fed.R.Civ.P. 12(b)(6), presents an issue of first impression at the appellate level concerning the provision of the Act regulating repossession, 15 U.S.C.

§ 1692f(6)(A), although a similar claim has been rejected by another district court. *Larranaga v. Mile High Collection & Recovery Bureau, Inc.*, 807 F.Supp. 111, 112–13 (D.N.M.1992).

■ Sometimes when ARB repossesses a vehicle, it finds personal property of the owner inside it. When this happens, ARB sends the owner a letter telling him that if he wants his personal property back he must pay a $25 inventory and storage fee within 30 days, failing which ARB will either destroy the property or leave it in the vehicle when it ships it off to the lender whose collateral the vehicle is. This practice of conditioning the return of the owner's personal property on the payment of a fee is claimed to violate the Act.

The Act regulates the practices of "debt collectors," a term that is defined as excluding repossessors and other enforcers of security interests, 15 U.S.C. § 1692a(6), except that a repossessor may not take or threaten to take nonjudicial action to dispossess a person of property if "there is no present right to possession of the property claimed as collateral through an enforceable security interest." § 1692f(6)(A). Suppose that a debtor owns two cars, a Ford and a Buick, and a creditor has a security interest in the Buick but not in the Ford. The debtor defaults, and the creditor hires ARB to repossess the Buick. If, in order to put more pressure on the debtor to pay, ARB repossessed the Ford as well, it would be violating the statutory provision that we have just quoted. It would be treating the Ford as additional collateral ("claim[ing it] as collateral") for the loan, without having any right to take possession of the Ford.

But in this case ARB took possession of personal property in which the creditor (ARB's principal) had no security interest not as collateral for the principal's loan but instead as an unintended incident to the repossession of that collateral. Having found itself in possession of this property, it had to incur notice, storage, and related costs to protect itself from being sued successfully for conversion if Nadalin should claim that it had kept the property. E.g., *PACCAR Financial Corp. v. Howard,* 615 So.2d 583, 588–89 (Miss.1993); *Ford Motor Credit Co. v. Waters,* 273 So.2d 96 (Fla.App.1973); *Larranaga v. Mile High Collection & Recovery Bureau, Inc., supra,* 807 F.Supp. at 113–15; Jonathan Sheldon, *Repossessions and Foreclosures* § 7.3.1.1, pp. 198–99 (3d ed.1995); Robert M. Lloyd, "Lender Liability for Wrongful Repossession," 114 *Banking L.J.* 612, 630–33 (1997). The duty was practical rather than legal. ARB's common law duty was only to give the owner a reasonable opportunity to retrieve his property. *PACCAR Financial Corp. v. Howard, supra,* 615 So.2d at 589. But without inventorying, storage, and notice, ARB might be hard pressed to show that it had discharged that duty. And in addition to the common law duty the security agreement between creditor and debtor authorized the creditor (and hence its agent, ARB) to take "any goods [found in the vehicle] not covered by this Agreement at the time of repossession ... provided that Lender makes reasonable efforts to return them to me [the debtor] after repossession." The performance of this contractual duty required inventorying, storage, and notice of the found property.

■ The plaintiff tries to tie these duties to the federal debt collection statute through the common law of bailments. Since ARB acquired custody of the plaintiff's personal property by accident, it was what the common law calls a constructive bailee, as distinct from a bailee by contract. E.g., *Miles v. International Hotel Co.,* 289 Ill. 320, 124 N.E. 599, 602 (1919); *Christensen v. Hoover,* 643 P.2d 525, 529–30 (Colo.1982); *Capezzaro v. Winfrey,* 153 N.J.Super. 267, 379 A.2d 493, 495 (N.J.App.1977) (per curiam). The prevailing rule is that a constructive bailee does not acquire a lien in the bailed good, and thus has no right to take possession of the good in order to compel the bailor to reimburse even the minimum expense incurred in preserving what might be valuable property from loss or destruction. E.g., *Hertz Corp. v. Paloni,* 95 N.M. 212, 619 P.2d 1256, 1258–59 (App.1980); *Hartford Ins. Co. v. Overland Body Tow, Inc.,* 11 Kan. App.2d 373, 724 P.2d 687, 689–90 (1986). He has no right to reimbursement or compensation, period. But there are exceptions, Saul Levmore, "Explaining Restitution," 71 *Va. L.Rev.* 65 (1985); *Restatement of Restitution* § 117(1) (1937), of which the best known is

the doctrine of salvage in admiralty law, see *The Sabine*, 101 U.S. 384, 25 L.Ed. 982 (1880); *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion*, 773 F.2d 1528, 1535 (11th Cir.1985) (technically not an exception, because admiralty law, though judge-made, is not common law in the strictest sense). Of particular pertinence here, a finder (who is a type of bailee) is sometimes held entitled to compensation for his reasonable expenses in taking care of the found goods until the owner reclaims them; and sometimes the finder is allowed a lien in the goods in order to enforce his right to compensation. See *Moore v. Moore*, 835 P.2d 1148 (Wyo.1992); *Gordon H. Ball, Inc. v. Parreira*, 214 Cal.App.2d 697, 29 Cal.Rptr. 679 (1963); *Brown on Personal Property* § 12.4 (3d ed.1975); 2 George E. Palmer, *The Law of Restitution* § 10.3 (1978).

The law is torn in two ways. On the one hand, it doesn't want to encourage "officious intermeddlers," *Restatement, supra*, § 2; *id.*, § 117 comment e, such as the violinist who, unsolicited, plays beneath the defendant's window and then sues him for the value of the performance. *Goldstick v. ICM Realty*, 788 F.2d 456, 467 (7th Cir.1986). Better that the violinist should negotiate with the defendant rather than thrusting on the court the difficult task of constructing a hypothetical bargain. On the other hand, when a businessman renders a valuable service in circumstances in which compensation would normally be expected, and though he is acting without the knowledge or consent of the recipient of the service there is no alternative because transacting with the owner would be infeasible (maybe the owner can't be located), an award of compensation is appropriate to encourage a valuable activity. *Restatement, supra*, § 117(1); see also *Cosgrove v. Bartolotta*, 150 F.3d 729, 734 (7th Cir.1998); *Grice v. Berkner*, 148 Minn. 64, 180 N.W. 923 (1921). The fact that the finder, the "constructive bailee," is a businessman is important because it makes it easier for the court to compute a reasonable fee for the service and thus to construct and enforce a hypothetical contract.

The issue of the finder's or bailee's lien is critical to the practical enforceability of a right to a fee. The plaintiff in our case does not even argue. that the repossessor can't charge a fee. He argues that the repossessor can't hold onto his personal property in order to collect the fee. It can set the fee and sue to collect it, at least as a matter of state law (the provision of the Fair Debt Collection Practices Act relating to repossessors is limited by its terms to nonjudicial action), but according to the plaintiff it must return the property whether or not the fee is collectible. As a practical matter, this approach would prevent the repossessor from collecting any fee, because no rational person brings a lawsuit for $25 and voluntary payment is unlikely given the circumstances (the owner having defaulted on his vehicle loan, thereby giving rise to the right of repossession). Maybe this is indeed the law; the only case that we have found suggests that Illinois courts would not recognize a lien in the circumstances of the present case. *Chesterfield Sewer & Water, Inc. v. Citizens Ins. Co.*, 57 Ill.App.2d 90, 207 N.E.2d 84, 86 (1965). And the clause in the security agreement concerning the repossessor's duty to make reasonable efforts to return to the borrower any property found in his vehicle when it is repossessed, containing as it does no mention of a fee, might be thought to entitle the owner to the return of his property gratis. Cf. *Hartford Ins. Co. v. Overland Body Tow, Inc., supra*, 724 P.2d at 689–90.

We don't have to resolve these issues. We can assume that ARB has no lien, or for that matter no legal right to charge Nadalin a dime for the costs incurred in preserving and returning the property that he left in a vehicle that he knew or should have known might be repossessed at any moment. It makes no difference. This is not a suit under the common law of bailments or conversion. So far as the Fair Debt Collection Practices Act is concerned, the only thing that's important is that the repossessor was not acting as the lender's agent when in effect it asserted a lien in order to enforce its $25 fee. If ARB received the $25 fee and returned the property to the borrower-owner, the lender would not benefit. If it destroyed the property, the lender would not benefit either. If it just left the stuff in the vehicle when it shipped the vehicle off to the lender for sale at a foreclosure sale, this might benefit the lender, depending on the value and salability of the

property; but it would be a benefit that it was in the borrower's power to deny simply by paying the $25 fee and getting the property back. Presumably the borrower would do that if the property was worth more than $25. If it was worth less, it might end up in the hands of the lender if the defendant didn't bother to destroy it; but the sale value of personal property worth less than $25 would rarely if ever exceed the costs of sale.

ARB did not seize the plaintiff's personal property for the purpose or with the likely effect of using it to satisfy the plaintiff's debt to ARB's principal. The seizure was not a method of enforcing a debt owed to the lender. It was not an effort to claim and seize additional collateral for the loan. We can find no evidence that Congress in the debt collection statute meant to extinguish repossessors' common law rights and remedies, whatever they may be, as bailees, provided the repossessor is not seizing property as collateral for the lender's loan to the owner.

It is relevant to note the absence of any suggestion that the $25 fee is unreasonably high, in the sense of giving the repossessor more than the average cost of preserving and returning the owner's property left in the vehicle. If it were unreasonably high in that sense, and if it were divided directly or indirectly with the creditor (indirectly if, for example, the repossessor looked to the unreasonably high fee as its principal compensation for the repossession service and therefore charged its principal a below-market price for that service, thus increasing the principal's net recovery on the defaulted loan), there would be an argument that the creditor and the repossessor were using the device of a bailment fee to extort the payment of the debt owed the creditor. Or suppose the fee were huge—say it was $500—*and* the practice of the repossessor were to forward the repossessed vehicle to the lender without destroying any personal property found in it. If under this regime the repossessor repossessed a vehicle containing, say, $200 worth of the defaulting borrower's eminently salable personal property, that property would become in effect additional collateral for the defaulted loan, for the borrower would refuse to pay the fee (because the fee exceeded the value of the property) and as a result the lender would be able to liquidate the personal property and use the proceeds to reduce the borrower's debt. Nothing like that is alleged here.

What is true, although it goes unmentioned by the plaintiff, is that under the Uniform Commercial Code a secured creditor who repossesses the collateral for his loan is entitled to recover not only the principal of and the interest due on the loan but also the reasonable expenses of collecting the loan. UCC § 9–504(1)(a), 810 ILCS § 5/9–504(1)(a); *Contrail Leasing Partners, Ltd. v. Consolidated Airways, Inc.*, 742 F.2d 1095, 1098–99 (7th Cir.1984). These might include expenses of preserving and returning the incidental personal property of the debtor. If the creditor—or his agent, the repossession company—tried to collect these expenses by asserting a lien in the borrower's personal property, this would be taking possession of property claimed as collateral *not* pursuant to a security interest (the security agreement does not purport to give the creditor a lien in property found in the repossessed vehicle) and hence without a right to take possession of it. And that is what the Fair Debt Collection Practices Act forbids repossessors to do. But this theory of violation is not argued, and so is waived.

If the $25 fee or the self-help method of collecting it adopted by the defendant is unlawful under the Illinois common law of bailments or conversion, then the plaintiff presumably has a remedy under Illinois law. He has in fact made a claim under that law, but the district court properly relinquished the claim to the state court when it dismissed the federal claim. 28 U.S.C. § 1367(c)(3). But the plaintiff has failed to advance a tenable claim under the federal debt collection statute.

AFFIRMED.